810 P.2d 798

**Ravindra GORADIA,
Plaintiff–Appellant,**

v.

**HAHN COMPANY, Defendant–Appellee.**

No. 19496.

Supreme Court of New Mexico.

April 30, 1991.

Sager, Curran, Sturges & Tepper, Matthew P. Holt, Las Cruces, Sager, Curran, Sturges & Tepper, Christopher P. Bauman, Albuquerque, for plaintiff-appellant.

Richard M. Leverick, Albuquerque, for defendant-appellee.

OPINION

SOSA, Chief Justice.

Plaintiff-appellant, Ravindra Goradia (Goradia), appeals grant of summary judgment to defendant-appellee, Hahn Company (Hahn). The essence of Goradia's complaint[1] was that Hahn discriminated against Goradia on the basis of his national origin (East Indian) when Hahn refused to renew a lease Goradia had on a space in a shopping center which Hahn managed and in which Goradia had been a tenant for some eight years.

The record discloses the following pertinent facts. Goradia, a dominant shareholder in La Fama, Inc. (La Fama), sold Indian clothing in La Fama's store. It was La Fama and not Goradia who was the tenant of record. Nonetheless, even though La Fama was not a corporation sole, La Fama and Goradia were for all practical purposes equivalent. Hahn argues that because it was La Fama whose lease was not renewed, rather than Goradia's, Hahn could not have committed racial discrimination against the corporation. For purposes of the present discussion, we will consider Goradia the tenant.

Except for the last two years, when his sales volume dropped slightly, Goradia's sales went up consistently from year to year and, based on substantial credible evidence introduced in support of his motion, he was one of the most successful proprietors in the shopping center. Yet, when he pursued the question of renewing the corporation's lease, he met with resistance, and, as he interprets it, rebuffs and stalling tactics.

Shortly before the term of the lease expired, he was informed that his lease would not be renewed but that he would be offered the chance to lease another space in the shopping center—this one on the periphery of the shopping center without access to the interior—after paying Hahn a "finder's fee" of $80,000 to induce the present tenant of the new premises to relocate. Goradia rejected the new space, refused to sign anything other than a renewed lease on his accustomed space, and refused to move out. Eventually, after he filed a suit to restrain Hahn from taking any steps to remove him from the premises, he entered into a settlement with Hahn

---

1. Goradia alleges violation of the Human Rights Act, particularly, NMSA 1978, Section 28–1–7(G) (Repl.Pamp.1987) (unlawful practice to discriminate in leasing on the grounds of national origin), which he compares to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

whereby he agreed to remove himself from the premises—roughly a month after the lease expired.

In the present suit, akin to a civil rights action, Goradia alleges that Hahn refused to renew the lease on the grounds that he sold Indian clothing. He cites evidence in the record establishing that Hahn had decided to oust him from the premises as early as mid–1987, even though he was not told his lease would not be renewed until shortly before the end of March, 1988.[2]

Hahn contends that its decision not to renew the lease was purely a business judgment based on its efforts to improve its "tenant mix." Hahn also argues that Goradia's way of merchandising set up a "garage sale" atmosphere not conducive to its philosophy of renting. There is credible and substantial evidence in the record to the effect that Goradia's store was more of a "neighborhood store" than a store suited to a *modern shopping center mall.*

Hahn first attempted unsuccessfully to lease the premises to a sandwich company, but would not allow the company to sell pizza and yogurt because this would cause competition with other established tenants in the shopping center. Eventually, after the space stood vacant until well after the lease expired,[3] Hahn rented the premises to a flower shop.

Even though the flower shop's sales are of a lower volume than were Goradia's, Hahn argues that more customers are attracted to the flower shop and enter the shopping center than would do so if Goradia's shop still remained on the premises. This is so because flowers cost less than Indian clothing, and thus more people buying flowers will spend less in total volume than fewer customers purchasing Indian clothing.

To Hahn, this state of affairs is favorable. Hahn thus argues that even though Goradia's sales volume was higher than the flower shop's, the volume of potential customers in the shopping center is higher with the flower shop. Hahn also points out that the square footage in Goradia's shop was relatively small, accounting for his high sales-to-square-foot volume.

Goradia points to testimony of his leasing consultant, Mr. Laubert, who had previous considerable experience with Hahn and the shopping center, to the effect that the only explanation for Hahn's refusal to rent to Goradia was his ethnic background. There is nothing in the record to explain why Hahn, in renting to Goradia in the first place and allowing him to stay for eight years without any evidence of harassment, is now alleged to have discriminated against him.[4]

Two witnesses of Arabic descent testified by affidavit to the effect that they knew of no prior discrimination against tenants by Hahn and did not feel that they themselves had ever been discriminated against because of their national origin. Although Goradia testified in deposition that other tenants were "having a hard time" with Hahn (*i.e.,* being discriminated against because of their race or ethnic background), he could not name these tenants. There is thus no substantial evidence in the record to substantiate Goradia's charge that Hahn discriminated against other tenants.

Goradia maintains that the court erred in granting summary judgment because he has established a prima facie case that has not been rebutted by Hahn. He relies principally on *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the standard in *McDonnell Douglas,* Goradia argues, having established his prima facie case without rebuttal from Hahn, the remaining fact questions should be tried by a factfinder.

---

2. The lease expired on March 31, 1988, and Goradia surrendered the premises some time before April 29, 1988.

3. Some eight months elapsed between Goradia's departure and the new tenant's taking possession. Hahn maintains that a substantial portion of that time was spent in readying the location for a different kind of business.

4. At oral argument, Goradia's counsel speculated that the original leasing representative for Hahn, Mr. Laubert, was not prejudiced against Goradia, but that Hahn's leasing representative who would have handled the new lease, *was* motivated by prejudice.

Hahn relies on the same case, arguing that Goradia has not established the proof required by *McDonnell Douglas*.

Hahn notes that it is La Fama that was refused the lease and not Goradia, and that even if the reason for refusal was the shop's selling Indian clothing, refusal on this ground does not constitute actionable discrimination. In essence, Hahn argues that if it chooses one type of goods to be sold in its store over another, that fact alone does not establish a violation of the Human Rights Act. It notes that it rejected the sandwich company because that shop wanted to sell pizza, but that does not mean it was discriminating against Italians.

Goradia contends:

In attempting to justify the grant of summary judgment, the Hahn Company asks this Court to believe that it refused to renew Mr. Goradia's lease solely because it wanted to use the property for something other than ... the sale of women's clothing with some indicia of Indian origin. The entire crux of this case is whether, as a matter of law, a jury would have been obligated to believe the Hahn Company's position in this regard.

. . . .

[T]he issue before the Court is whether Mr. Goradia produced sufficient evidence such that a jury could find that the elements of the *McDonnell Douglas* methodology has [sic] been met.

We agree with Goradia's premises but not his conclusions and thus affirm the grant of summary judgment. That is, we find as a matter of law, as did the trial court, that a jury could not have found that Hahn had racially discriminatory motives for not renewing the lease. Thus, the jury could not have found a violation of the Human Rights Act simply because Hahn did not renew the lease on the basis of the kind of goods that Goradia sold or because it wanted a different tenant in the space.[5] Therefore, we disagree with Goradia that "the evidence in this case would justify a determination that Mr. Goradia was the

victim of discrimination," or, at least, we disagree that he was the victim of invidious, racial discrimination that is actionable under the Human Rights Act.

True, Goradia was discriminated against, but so was the sandwich company, and so, perhaps would have been a shop that sold cowboy boots or New England Ladies fashions in a "garage sale" atmosphere. There is nothing in the record to suggest that La Fama's lease would have been renewed if, for example, an Irish person had been selling Indian clothing in Goradia's shop in a "garage sale" atmosphere. In other words, from the evidence presented to the trial court it is clear to us that but one conclusion could be drawn from the evidence—namely, that Hahn discriminated against Goradia for valid business reasons and not for invalid racial or ethnic reasons.

Pursuant to SCRA 1986, 1–056, summary judgment must be granted as a matter of law when there are no genuine issues of material fact. *See generally Goodman v. Brock*, 83 N.M. 789, 793, 498 P.2d 676, 680 (1972); *Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lujan v. National Wildlife Fed'n*, 497 U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. The court's role on motion for summary judgment is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552. Goradia, while having raised certain vague suspicions about Hahn's conduct, has failed to establish a *prima facie* case of invidious discrimination.

---

**5.** There is no evidence in the record showing the ethnic background of the new proprietor. For all the record discloses, the new proprietor may be from a minority group, as were several of Hahn's tenants.

If from the facts presented, "but one reasonable conclusion" can be drawn, *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, then summary judgment must be granted. Only if a fair minded factfinder, on the facts presented in Hahn's motion, could return a verdict for Goradia, can Hahn's motion be denied. *See, e.g., Chen v. Metropolitan Ins. and Annuity Co.*, 907 F.2d 566, 567 (5th Cir.1990) (construing *Anderson*).

Applying these standards, the motion must be affirmed. But one reasonable conclusion can be drawn from the facts presented to the trial court on the motion— namely, that Hahn discriminated against Goradia for valid business reasons and not for invalid racial or ethnic reasons. Goradia has not shown that Hahn did not want *Goradia* in the store; Goradia has shown at best that Hahn did not want Goradia's *goods* in the store. We know of no authority that compels a lessor to allow a tenant to sell whatever kind of goods the tenant wants to sell, or that prohibits a lessor from declining to have a certain type of goods sold in the leased premises. Rights inhere in people and not in goods.

Under the standards set forth in *McDonnell Douglas*, assuming arguendo that *McDonnell Douglas*, an employment discrimination case, applies to a landlord-tenant discrimination case, Goradia has not carried his burden of establishing a prima facie case of discrimination on Hahn's part. Thus, no rebuttal is called for by Hahn. Even if rebuttal were required, however, we find that Hahn's "evidence in rebuttal," the facts it presented to support its motion, completely negate any prima facie case that Goradia might have established. Thus, whether by summary judgment standards or by *McDonnell Douglas* standards, Goradia's case fails.

Accordingly, summary judgment is affirmed.

IT IS SO ORDERED.

BACA and FRANCHINI, JJ., concur.