This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39031**

**PATRICIA MULHOLLAND and M. MARK MULHOLLAND,**

Plaintiffs-Appellees,

v.

**BRENDA KASUBOSKI and THE ESTATES OF RAY BISHOP AND PATRICIA BISHOP,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Court Judge**

Charles E. Hawthorne, Ltd.
Charles E. Hawthorne
Ruidoso, NM

for Appellees

Keefe Law Firm
Lauren Keefe
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Brenda Kasuboski, in her individual capacity and as the executor for the estates of Ray and Patricia Bishop (collectively, the Estate), appeals the district court's judgment awarding Plaintiffs Patricia and Mark Mulholland damages based on Defendant's breach of their settlement agreement. Defendant argues that the district court erred in (1) concluding that claim preclusion did not apply to Plaintiffs' second

claim for damages based on breach of the settlement agreement and (2) determining that the parties entered into a claim-splitting agreement.[1] We agree and reverse.

**BACKGROUND**

**{2}**     This case stems from the sale of a vending machine business. In 1998, Ray Bishop sold his vending machine business to Ruidoso Vending, Inc. (Ruidoso Vending), a business owned by Plaintiffs. After payments for the business stopped and Ray Bishop passed away, Defendant, acting as executor of the Estate, filed suit against Ruidoso Vending for breach of contract. Defendant prevailed in the suit and a judgment of $102,062.11 was entered against Ruidoso Vending. After failed attempts to collect judgment from Ruidoso Vending, Defendant successfully pierced the corporate veil, thus imposing individual liability on Plaintiffs. Plaintiffs did not pay the full judgment.

**{3}**     On October 17, 2012, Defendant offered to forgive Plaintiffs' outstanding balance in exchange for title to their recreational vehicle free and clear of all encumbrances. The offer included a promise by Defendant to not pursue further collection efforts and that Plaintiffs could keep their vending business. Plaintiffs accepted the offer by letter. After the acceptance, Defendant attempted to modify her offer, arguing that she had not intended to "grant [Plaintiffs] a complete satisfaction of the judgments." Thereafter, Defendant successfully filed an application for a writ of execution against various assets owned by Plaintiffs. Defendant used the writ of execution to have the Lincoln County Sheriff seize and auction Plaintiffs' assets.

**{4}**     Less than two months later, Plaintiffs filed suit against Defendant for malicious abuse of process, breach of contract, wrongful execution, exemplary damages, and injunctive relief based on Defendant's failure to abide by the settlement agreement. Before the trial commenced, Plaintiffs made an oral motion to dismiss all claims except the breach of contract claim, admitting that they "didn't have a cause of action if the [district] court were to decide that the settlement agreement was not valid or could not be enforced." Counsel for Defendant responded to the motion by stating, "That's fine, your honor." Trial on the breach of contract claim ensued and the district court held in favor of Plaintiffs, finding that the parties entered into a valid settlement agreement. The district court entered a judgment against Defendant and concluded that Plaintiffs did not owe Defendant "any further judgment" arising from the prior litigation between them. The district court included in the judgment a recitation of the parties' pretrial stipulations, specifically that Defendant agreed to dismiss various causes of action within their complaint and Plaintiffs agreed to dismiss their counterclaims so that the parties could proceed to trial solely on the merits of Defendant's breach of contract claim in their

---

1Defendant further argues that the district court inappropriately held her individually liable for damages on the breach of contract claim and that the district court erred in using replacement costs instead of the fair market value to calculate damages. Reversal of the district court's award of damages is dispositive, and therefore we do not address these issues. *See State ex rel. Child., Youth & Fams. Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 31, 141 N.M. 299, 154 P.3d 674 ("Because we reverse on this basis, we do not reach [the r]espondent's remaining arguments on appeal.").

complaint for enforcement of the settlement agreement. Neither party appealed the judgment.

{5}     Five months later, Plaintiffs filed a "complaint for damages" against Defendant without clearly identifying a cause of action. Defendant moved for partial summary judgment, arguing that claim preclusion applied due to the previous judgment. Though there is no order in the record reflecting a decision, the district court apparently denied the motion for partial summary judgment and permitted the trial to proceed. After a trial on the merits, the district court found that Plaintiffs suffered damages due to the breach of the settlement agreement. The district court found Defendant individually liable for the breach of the settlement agreement and entered a judgment against her for damages. The judgment also inexplicably noted that "the settlement between the parties is enforceable by res judicata."

{6}     Defendant filed a motion for reconsideration asking the district court to set aside entirely or modify the judgment based on claim preclusion. The district court held a hearing on Defendant's motion and explained that it was under the impression that the parties had a claim-splitting agreement that allowed them to pursue damages in the second case. In a minute order, the district court concluded that the two actions "are not appropriately related in time, space, origin or motivation, are not a convenient unit for trial purposes and that the expectations when [the parties] conducted the [first trial] were that they were determining whether the [s]ettlement [a]greement was enforceable." Further, in its amended judgment the district court asserted that "the parties stipulated that the issues of damages would be considered later." This appeal followed.

## DISCUSSION

### I.     The District Court Erred in Concluding That Claim Preclusion Did Not Apply

{7}     Defendant argues that the district court should not have allowed the second trial to proceed because the cause of action was the same in both cases: breach of the settlement agreement. Plaintiffs respond that the cases did not include the same cause of action: the first case was to determine the "existence and enforcement of [the] settlement agreement" and the second case was about the breach of the settlement agreement and the resulting damages. We review the application of claim preclusion de novo. *Moffat v. Branch*, 2005-NMCA-103, ¶ 10, 138 N.M. 224, 118 P.3d 732. As discussed below, we agree with Defendant.

{8}     "Res judicata or claim preclusion is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Tafoya v. Morrison*, 2017-NMCA-025, ¶ 32, 389 P.3d 1098 (alteration, internal quotation marks, and citation omitted). The party asserting "claim preclusion must establish that (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Potter v. Pierce*,

2015-NMSC-002, ¶ 10, 342 P.3d 54. The parties do not dispute that the first three elements of claim preclusion are satisfied; thus, at issue here is whether the cause of action is the same in both proceedings.

**{9}** To answer this question we use the transactional approach. *See id.* ¶ 11 ("New Mexico ha[s] adopted the transactional approach in analyzing the single-cause-of-action element of [claim preclusion]."). "This approach disregards the specific legal theories or claims that were or were not invoked in a prior action." *Moffat*, 2005-NMCA-103, ¶ 17. Instead, we "engage in a pragmatic assessment of the transaction, with a 'transaction' being described as a natural grouping or common nucleus of operative facts." *Id.* (internal quotation marks and citation omitted). To make that assessment we must consider "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 12, 122 N.M. 326, 924 P.2d 735 (relying on Restatement (Second) of Judgments § 24 (1982)).

**{10}** Regarding the first factor, both cases arose from Defendant's breach of the settlement agreement. Generally, cases are related in time, space, origin, and motivation when "the same operative facts form the basis of both complaints and . . . the same alleged wrongs are sought to be redressed in both lawsuits." *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 40, 406 P.3d 1012 (alterations, internal quotation marks, and citation omitted). Plaintiffs' first complaint alleged breach of contract, abuse of process, and wrongful execution based on Defendant's attempt to collect judgment through a writ of execution, thus breaching the settlement agreement. Plaintiffs' second complaint for damages was likewise based on Defendant's breach of the settlement agreement and the resulting damages. Both complaints include as operative facts Defendant's settlement offer—in which she offered to forgive the remaining balance in exchange for title to Plaintiffs' recreational vehicle—and Plaintiffs' acceptance. Moreover, both complaints describe how Defendant's breach of the settlement agreement involved obtaining a writ of execution against Plaintiffs and seizing their property. Accordingly, the same operative facts form the basis of both complaints.

**{11}** We reject Defendant's arguments that a sufficient time period separated the cases. Plaintiffs base their argument on the corollary that they incurred the damages after Defendant's breach. Breach of a contract and the corresponding damages, however, are elements of a single cause of action. *See Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 11, 301 P.3d 387 (explaining that "in an action for breach of contract, the breaching party is justly responsible for all damages flowing naturally from the breach" (internal quotation marks and citation omitted); *see also Peralta v. Martinez*, 1977-NMCA-040, ¶ 6, 90 N.M. 391, 564 P.2d 194 ("A wrong without damage or damage without wrong does not amount to a cause of action."), *abrogated on other grounds as recognized by Maestas v. Zager*, 2007-NMSC-003, 141 N.M. 154, 152 P.3d 141. Naturally, Defendant's breach and the resulting damages are the "thrust of both actions" and part of "the same alleged wrongs" that formed the basis

for both complaints. *See Ford v. N.M. Dep't of Pub. Safety*, 1994-NMCA-154, 119 N.M. 405, 891 P.2d 546.

**{12}** Plaintiffs maintain that "the subject matter in both cases is different and the causes of action in each case is different." Specifically, Plaintiffs contend that the first case was a contract cause of action and the second sought damages for a tort. Our Supreme Court has clarified, however, that "[d]ifferent legal theories arising out of a given episode do not create multiple transactions and hence multiple claims." *Three Rivers Land Co., Inc. v. Maddoux*, 1982-NMSC-111, ¶ 28, 98 N.M. 690, 652 P.2d 240 (internal quotation marks and citation omitted), *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, 105 N.M. 57, 728 P.2d 467. As discussed above, the same conduct and interactions form the basis of both complaints, with the allegations centering on Defendant's breach of the settlement agreement. *See id.* ¶ 29 (holding that claim preclusion applies to bar a second case where the only difference is the remedy sought because both cases arise from the same transaction). Consequently, both cases arose from the same transaction and sought to remedy the underlying wrong: Defendant's breach of the settlement agreement.

**{13}** Turning to the second factor, the foundational facts in both cases form a convenient unit for trial purposes because there is an overlap of the witnesses and evidence relevant to the claims. *See Anaya*, 1996-NMCA-092, ¶ 14 ("In considering whether the facts form a convenient unit for trial, we examine overlap of the witnesses and evidence relevant to the claims in the two lawsuits."). Here, the parties presented the same witnesses and evidence in both cases. Defendant presented the settlement correspondence between the parties to prove the validity of the settlement agreement. Furthermore, Plaintiff Mark Mulholland testified in both trials that the parties entered into the settlement agreement, that Defendant breached the agreement, and that Plaintiffs suffered damages due to the breach. The first case required the district court to consider the breach of the settlement agreement and could have easily determined damages. *See Potter*, 2015-NMSC-002, ¶ 14 (holding that claims would have formed a convenient trial unit when the court is already required to hear the claims and has procedure available to make the necessary determination). Therefore, the cases formed a convenient unit for trial purposes.

**{14}** Finally, under the third factor of the transactional approach Defendant "could have a reasonable expectation that the conclusion of the first suit would preclude later claims." *See Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 18, 314 P.3d 698. Not only did the underlying facts in both complaints substantially overlap, Plaintiffs' claims were fragments of Defendant's breach of contract. *See id.* (deciding that it is reasonable for a party to expect preclusion of claims when the cases' facts substantially overlap). In the first case, the complaint asserts that the "breach of contract caused the plaintiffs to incur damages in amount proven at the trial of this matter." Furthermore, the parties agreed, and the district court explained, that the trial would proceed "on the merits on only the breach of contract cause of action in [Plaintiffs'] complaint for enforcement of the settlement agreement." After trial on the first case, the district court ruled that Plaintiffs "do not owe [Defendant] any further judgment liens."

That ruling relieved Plaintiffs of more than $90,000 in debt. The second complaint sought damages based on the same breach of the settlement agreement. Given that the facts and claims underlying each case are substantially the same, it is reasonable for Defendant to expect the conclusion of the first case to preclude any further claims arising from the breach of contract. *See id.*

**{15}** We conclude that the two causes of action were the same, and therefore claim preclusion applies. *See Potter*, 2015-NMSC-002, ¶ 10 (requiring the causes of action to be the same for claim preclusion to apply). Plaintiffs could and should have brought their claim for damages with the first breach of contract action. *Id.* ¶ 15. Accordingly, claim preclusion precluded Plaintiffs from pursuing their second action, unless an exception, such as claim-splitting, applies. *See Concerned Residents of S.F. N. v. Santa Fe Ests., Inc.*, 2008-NMCA-042, ¶¶ 26-27, 143 N.M. 811, 182 P.3d 794 (explaining that claim-splitting is an exception to claim preclusion).

## II. The District Court Erred in Relying on a Claim-Splitting Agreement to Allow the Second Case to Go to Trial

**{16}** In its amended judgment, the district court found that "the parties stipulated that the issues of damages would be litigated later," which we view as a determination by the district court that there was a claim-splitting agreement between the parties. *See Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, 140 N.M. 111, 140 P.3d 532 ("[S]ubstance trumps form when interpreting court orders."). Plaintiffs defend the district court's decision on the ground that Defendant acquiesced to claim-splitting. We review whether a claim-splitting agreement existed between the parties, or whether Defendant acquiesced to claim-splitting, de novo. *See Concerned Residents of S.F. N.*, 2008-NMCA-042, ¶ 22.

**{17}** Defendant argues that Plaintiffs "never attempted to present any evidence, at any point, showing that there was an agreement between the parties." Plaintiffs respond that Defendant agreed to split the claims by responding, "That's fine, your honor," when asked by the district court if the trial could proceed only on the breach of contract claim. We reject Plaintiffs' argument—Defendant's response was insufficient to enter into a claim-splitting agreement or acquiesce in claim-splitting.

**{18}** The doctrine of claim-splitting allows a plaintiff to bring a second action against a defendant to "present evidence or grounds or theories of the case not presented in the first action, or . . . to seek remedies or forms of relief not demanded in the first action." *Chaara v. Lander*, 2002-NMCA-053, ¶ 14, 132 N.M. 175, 45 P.3d 895. Parties enter into a claim-splitting agreement when they "have agreed in terms or in effect that the plaintiff may split [their] claim, or the defendant has acquiesced therein." *Concerned Residents of S.F. N.*, 2008-NMCA-042, ¶ 26 (alteration omitted). We next explain why Defendant did not agree or acquiesce to Plaintiffs splitting their breach of contract claim.

**{19}** Defendant did not agree to a claim-splitting agreement because there was no mutual assent. Plaintiffs contend that "[t]he issue of there being a claim-splitting

agreement was settled forever in the [f]irst [c]ase and [Defendant] never objected." To support their contention, Plaintiffs point to the district court exchange where counsel for Defendant responded, "That's fine," to Plaintiffs' request to dismiss various claims and go forward on the breach of contract claim only. Defendant's "that's fine" response could reasonably be interpreted as a simple acknowledgment of Plaintiffs' oral motion to voluntarily dismiss all but their breach of contract claim. *See Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232 ("The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear."). This exchange is insufficient to establish an agreement because it is too vague to demonstrate assent. *See id.* ("An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity."). Accordingly, we conclude that Defendant did not agree to a claim-splitting agreement.

**{20}** Nonetheless, Plaintiffs insist that the parties acquiesced to claim-splitting. In the first case, however, neither the parties nor the district court expressly reserved Plaintiffs' right to bring their voluntarily-dismissed claims in a later action or mentioned the existence of a claim-splitting agreement, nor were there simultaneous actions based upon the same claim. *See Concerned Residents of S.F. N.*, 2008-NMCA-042, ¶ 26 (explaining that parties can agree to a claim-splitting agreement or that a second action based upon parts of the same claim is not precluded when "plaintiff is simultaneously maintaining separate actions . . . and in neither action does the defendant make the objection that another action is pending based on the same claim" (relying on Restatement (Second) Judgments, § 26); Restatement (Second) Judgments, § 26(1)(b). Instead, the parties stipulated that Plaintiffs would voluntarily dismiss all but their breach of contract claim, and that Defendant would voluntarily dismiss her malicious abuse of process claim. The first mention of any claim-splitting agreement between the parties occurred in the second case during the hearing on Defendant's post-trial motion for reconsideration asking the district court to set aside entirely or modify the judgment. At the hearing, the district court judge, who did not preside over the first case, indicated sua sponte that he had been under the impression that the parties agreed Plaintiffs could pursue a separate action to recover damages arising from the breach of the agreement.

**{21}** Before this, Defendant had steadfastly asserted the defense of claim preclusion and, in response, Plaintiffs failed to mention the possibility of a claim-splitting agreement or Defendant's acquiescence to claim-splitting. Indeed, Plaintiffs had multiple opportunities to assert such an exception to claim preclusion existed, including in their responses to Defendant's answer and counterclaim asserting the defense of claim preclusion, motion for partial summary judgment, and motion to stay enforcement of judgment, but failed to do so. In contrast, Defendant repeatedly asserted the defense of claim preclusion from the beginning of the second case. *See Cagan v. Vill. of Angel Fire*, 2005-NMCA-059, ¶ 33, 137 N.M. 570, 113 P.3d 393 (providing that the defendant's repeatedly-asserted defense of claim preclusion throughout the second case was "sufficient to bring to the attention of the district court and [the p]laintiffs that the [defendant] objected to claim-splitting"), *as modified by Concerned Residents of S.F.*

*N.*, 2008-NMCA-042, ¶ 45. Indeed, Plaintiffs' testimony supports that they did not bring a claim of damages in the first action because they overlooked it, not because of the presence of any claim-splitting agreement between the parties. Consequently, Defendant did not acquiesce to the claim-splitting agreement.

**CONCLUSION**

**{22}**  For the foregoing reasons, we reverse and remand.

**{23}**  **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**MICHAEL D. BUSTAMANTE, Judge,
retired, sitting by designation**